# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| MARK HENDRIKS, Individually And On Behalf Of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> PHARMACEUTICAL PRODUCT DEVELOPMENT, INC., FREDRIC ESHELMAN, RAYMOND HILL, ERNEST MARIO, STUART BONDURANT, FREDERICK FRANK, TERRY MAGNUSON, VAUGHN D. BRYSON, ROBERT ALEXANDER INGRAM, and RALPH SNYDERMAN. <br><br> Defendants. | **Case No. 11-176** <br><br> **CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTY** <br><br><br> JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Plaintiff, Mark Hendriks ("Plaintiff") by his attorneys, for his complaint against defendants, alleges upon personal knowledge as to himself, and upon information and belief as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      This is a shareholder class action brought by Plaintiff on behalf of himself and all other similarly situated public shareholders of Pharmaceutical Product Development, Inc. ("PPDI" or the "Company") to enjoin the acquisition of the publicly-owned shares of PPDI common stock by Jaguar Holdings, LLC ("Jaguar"), an affiliate of The Carlyle Group and Hellman & Friedman LLC, and its wholly-owned subsidiary, Jaguar Merger Sub, Inc. ("Merger Sub") (Jaguar Holdings, LLC, The Carlyle Group, Hellman & Friedman LLC, and Jaguar

Merger Sub, Inc. are collectively referred to herein as "the Buyout Group") as detailed herein (the "Proposed Transaction").

2.     On October 3, 2011, PPDI publicly disclosed that they had entered into a definitive merger agreement (the "Merger Agreement"), under which it will be acquired by affiliates of The Carlyle Group and Hellman & Friedman in an all-cash transaction valued at $3.79 billion, after which PPDI will be a private company.  Under the terms of the Merger Agreement, The Carlyle Group and Hellman & Friedman will acquire the outstanding common shares of PPDI for $33.25 per share in cash.  The Proposed Transaction is unfair both with respect to price and process and is designed to benefit PPDI's insiders to the detriment of Plaintiff and the Class (defined herein).

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1332(a), (c), and (d) as Plaintiff and the defendants are citizens of and domiciled in different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.  Given that the Proposed Transaction is valued at $3.79 billion, the injunctive relief sought herein will exceed a sum or value of $75,000.  This action is not a collusive one to confer jurisdiction on this Court.

4.     Venue is proper in this Court pursuant to 28 U.S.C. §1391 because one or more of the defendants, including PPDI either resides in or maintains executive offices in this District, and a substantial portion of the transactions and wrongs that are the subject of this complaint, occurred in substantial part in this District.  Finally, the defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

5.    Plaintiff, Mark Hendriks is and was, at all times relevant hereto, a holder of PPDI common stock.  Plaintiff is a citizen of California.

6.    PPDI is a North Carolina corporation headquartered at 929 North Front Street, Wilmington, NC 28401.  The Company's primary businesses are drug discovery, development, and lifecycle management services.  PPDI common stock is traded on the NASDAQ Stock Exchange under the symbol "PPDI."  PPDI is a citizen of North Carolina.

7.    Defendant Fredric Eshelman ("Eshelman") has been a director of PPDI since 1993, Chief Executive Officer of the Company since 1993, and Chairman since 2009. Eshelman owns 7.4 million shares of PPDI common stock.  Eshelman is a citizen of North Carolina and resides at 6799 Towles Road, Wilmington NC 28409.

8.    Defendant Raymond Hill ("Hill") has been a director of PPDI since September, 2011.  Hill owns 30,000 shares of PPDI common stock.  Hill is a citizen of New Jersey and resides at 5 W Shore Drive, Pennington NJ 08534.

9.    Defendant Ernest Mario ("Mario") has been a director of PPDI since 1993 and served as the chairman of the Board from 1993 to 2009.  Mario owns almost half a million shares of PPDI common stock.  Mario is a citizen of Pennsylvania and resides at 350 S River Rd., Apt. A8, New Hope, PA 18938.

10.    Defendant Stuart Bondurant ("Bondurant") has been a director of PPDI since 1994.  Bondurant owns 21,479 shares of PPDI common stock.  Bondurant is a citizen of North Carolina and resides at 209 Cedar Berry Lane, Chapel Hill, NC 27517.

3

11.     Defendant Frederick Frank ("Frank") has been a director of PPDI since 1996. Frank owns 72,565 shares of PPDI common stock.  Frank is a citizen of New York and resides at 109 E 91st Street, New York, NY 10128.

12.     Defendant Terry Magnuson ("Magnuson") has been a director of PPDI since 2001.  Magnuson owns 17,633 shares of PPDI common stock.  Magnuson is a citizen of North Carolina and resides at 408 Mayberry Drive, Chapel Hill NC 27514.

13.     Defendant Vaughn D. Bryson ("Bryson") has been a director of PPDI since May, 2011.  Bryson owns 1,139 shares of PPDI common stock.  Bryson is a citizen of Florida and resides at 719 Grove Pl, Vero Beach, FL 32963.

14.     Defendant Robert Alexander Ingram ("Ingram") has been a director of PPDI since May, 2011.  Ingram owns 1,139 shares of PPDI common stock.  Ingram is a citizen of North Carolina and resides at 3624 Dover Road, Durham, NC 27707.

15.     Defendant Ralph Snyderman ("Snyderman") has been a director of PPDI since March, 2011.  Snyderman owns 1,139 shares of PPDI common stock.  Snyderman is a citizen of North Carolina and resides at 5800 Ten Springs Lane, Durham NC 27705.

16.     Defendants Fredric Eshelman, Raymond Hill, Ernest Mario, Stuart Bondurant, Frederick Frank, Terry Magnuson, Vaughn D. Bryson, Robert Alexander Ingram, and Ralph Snyderman are referred to herein collectively as the "Individual Defendants."

## THE INDIVIDUAL DEFENDANTS' FIDUCIARY DUTIES

17.     By reason of the above Individual Defendants' positions with the Company as directors and/or officers, said individuals are in a fiduciary relationship with Plaintiff and the other public stockholders of PPDI who are being and will be harmed by the defendants' actions

4

described herein (the "Class") and owe Plaintiff and the other members of the Class a duty of highest good faith, fair dealing, loyalty and full and adequate disclosure.

18.     Each of the Individual Defendants is required to act in good faith, in the best interests of the Company's shareholders and with such care, including reasonable inquiry, as would be expected of an ordinarily prudent person.  In a situation where the directors of a publicly traded company undertake a transaction that may result in a change in corporate control, the applicable state law requires the directors to take all steps reasonably required to maximize the value shareholders will receive rather than use a change of control to benefit themselves.  To diligently comply with this duty, the directors of a corporation may not take any action that:

(a)     adversely affects the value provided to the corporation's shareholders;

(b)     contractually prohibits them from complying with or carrying out their fiduciary duties;

(c)     discourages or inhibits alternative offers to purchase control of the corporation or its assets; or

(d)     will otherwise adversely affect their duty to search and secure the best value reasonably available under the circumstances for the corporation's shareholders.

19.     In accordance with their duties of loyalty and good faith, the Individual Defendants, as directors and/or officers of PPDI, are obligated under applicable law to refrain from:

(a)     participating in any transaction where the directors' or officers' loyalties are divided;

5

(b)     participating in any transaction where the directors or officers receive, or are entitled to receive, a personal financial benefit not equally shared by the public shareholders of the corporation; and/or

(c)     unjustly enriching themselves at the expense or to the detriment of the public shareholders.

20.     The Individual Defendants are also obliged to honor their duty of candor to PPDI's shareholders by, *inter alia*, providing all material information to the shareholders regarding a scenario in which they are asked to vote or tender their shares. This duty of candor ensures that shareholders have all information that will enable them to make informed, rational and intelligent decisions about whether to relinquish their shares in exchange for the consideration offered.

21.     Plaintiff alleges herein that Individual Defendants, separately and together, in connection with the Proposed Transaction, are knowingly or recklessly violating their fiduciary duties, including their duties of loyalty, good faith, and independence owed to Plaintiff and other public shareholders of PPDI. Certain of the Individual Defendants stand on both sides of the transaction, are engaging in self dealing, are obtaining for themselves personal benefits, including personal financial benefits not shared equally by Plaintiff or the Class. As a result of the Individual Defendants' self dealing and divided loyalties, neither Plaintiff nor the Class will receive adequate or fair value for their PPDI common stock in the Proposed Transaction.

## CLASS ACTION ALLEGATIONS

22.     Plaintiff brings this action pursuant to Rule 23 on behalf of himself and all other shareholders of the Company (except the defendants herein and any persons, firm, trust, corporation, or other entity related to or affiliated with them and their successors in interest),

who are, or will be, threatened with injury arising from defendants' actions, as more fully described herein.

23. This action is properly maintainable as a class action for the following reasons:

(a) The Class is so numerous that joinder of all members is impracticable. As of July 27, 2011, there were over 113 million shares of PPDI common stock issued and outstanding, likely owned by thousands of shareholders.

(b) Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff has the same interests as the other members of the Class. Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

(c) The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for defendants, or adjudications with respect to individual members of the Class that would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially members or impede their ability to protect their interests.

(d) To the extent defendants take further steps to effectuate the Proposed Transaction, preliminary and final injunctive relief on behalf of the Class as a whole will be entirely appropriate because defendants have acted, or refused to act, on grounds generally applicable to the Class.

24. There are questions of law and fact that are common to the Class including, *inter alia*, the following:

7

(a)     whether the Individual Defendants have breached their fiduciary duties of due care, good faith, and loyalty with respect to Plaintiff and the other members of the Class in connection with the conduct alleged herein;

(b)     whether the process implemented and set forth by the Individual Defendants in connection with the Proposed Transaction was fair to the members of the Class;

(c)     whether the Individual Defendants have breached their fiduciary duty of candor by failing to disclose all material facts relating to the Proposed Transaction; and

(d)     whether Plaintiff and the other members of the Class would be irreparably harmed if defendants are not enjoined from effectuating the transaction described herein.

25.     Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

26.     Plaintiff anticipates that there will be no difficulty in the management of this litigation.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## SUBSTANTIVE ALLEGATIONS

27.     PPDI is a leading contract research organization ("CRO") providing outsourced pharmaceutical research, clinical services, drug discovery and development services to pharmaceutical and biotechnology companies.  CROs such as PPDI provide pharmaceutical and biotechnology companies, universities and government organizations with drug-development and medical-device research services. Such companies help clients design and implement multiple phases of clinical trials, from recruiting volunteers and conducting laboratory tests to monitoring clinical data and safety standards.  PPDI also assists drug makers with preclinical services such as compound testing and discovery.   Burdened by more complex and costly

research and development, drug makers have in recent decades begun outsourcing some of these activities in an effort to maintain their own profit margins. The contract-research industry has benefited from this shift, but the earnings of many of the companies were hurt during the recession as big health-care companies reduced research spending. Companies like PPDI suffered in 2008-2009 due to a decline in demand for their services during a depressed economy.

28.     However, the environment for CROs is gradually improving. The improving request for proposals ("RFP") flows and key strategic partnerships secured by PPDI with bio-pharmaceutical customers are a testament to such a revival, which could in turn result in bottom-line growth. In fact, many in the CRO industry believe it has turned a corner, as evidenced by resurgence in new business activity and revenue growth over the past few quarters. The second quarter marked the first period since the beginning of the drug-development slowdown that the industry saw widespread top-line growth. The emergence of the strategic partnership model, which has seen the world's largest drug makers pair up with leading CROs as long-term research and development partners, has helped fuel this return to growth in the industry.

29.     For the first time since the beginning of the drug-development slowdown in 2009, the vast majority of the CROs in the market sector turned in top-line growth on both a sequential and year-over-year basis, and PPDI was one of the biggest top-line gainers during the second quarter of 2011. In particular, PPDI recorded net revenue of $407.7 million for the second quarter of 2011, an increase of 10.2% over net revenue of $369.9 million for the second quarter of 2010. Second quarter 2011 income from operations was $57.1 million, compared to $40.1 million for the second quarter of 2010. Income from operations for the second quarter of 2011 was higher than the same period last year due primarily to higher net revenue and a decrease in research and development and operating expenses due to the June 2010 spin-off of Furiex

9

Pharmaceuticals, Inc. Diluted earnings per share for the second quarter of 2011 were $0.41, compared to $0.18 for the second quarter of 2010. Second quarter 2011 diluted earnings per share included income of $10.6 million related to the Company's investment in Celtic Therapeutics and a $1.3 million loss on investments.

30.     Commenting on these second quarter 2011 results and the recent success the Company has experienced, Defendant Eshelman stated:

> Strong client demand for our services resulted in record high request for proposal levels, gross authorizations of $752.6 million, and a net book-to-bill ratio of 1.29 for the second quarter. While cancellations were higher than we expected, we continued to deliver solid backlog growth of 14% and double-digit percentage net revenue growth year-over-year in the quarter. ***We intend to remain focused on high-quality operational execution and cost control to drive value for our clients and shareholders***.

31.     Additionally, the Company announced on September 21, 2011 that it had expanded its clinical microbiology laboratory at its global central laboratories worldwide, strengthening its laboratory testing services in infectious diseases, one of the largest therapeutic areas for clinical research and development. This expansion allowed the strengthening of certain microbiology capabilities.

32.     However, rather than permitting the Company's shares to continue to trade freely and allowing its public shareholders to reap the benefits of the Company's strategic initiatives and CRO expansion which were already producing increasingly positive financial results and poised the Company for further improvements in the coming year, the Individual Defendants have acted for their own benefit and the benefit of the Buyout Group, and to the detriment of the Company's shareholders, by entering into the Merger Agreement. The Individual Defendants effectively capped PPDI's price at a time when the Company's stock was overcoming the effects

of the lingering economic recession and when it was poised to capitalize on its positive and encouraging financial outlook.

***The Proposed Transaction***

33.     On October 3, 2011, PPDI issued a press release announcing that it had entered into a definitive Merger Agreement pursuant to which the Buyout Group will acquire PPDI for $33.25 cash per share.  The press release for the Proposed Transaction touted what the purported "premium" represented over the market price of PPDI common stock, stating:

> Under the terms of the merger agreement, Carlyle and Hellman & Friedman will acquire the outstanding common shares of PPD for $33.25 per share in cash. This represents a premium of 29.6 percent over PPD's closing price on September 30, 2011.
>
> PPD's board of directors has unanimously approved the merger agreement and recommended that PPD's shareholders adopt the agreement. A special meeting of PPD's shareholders will be held following the filing of a definitive proxy statement with the U.S. Securities and Exchange Commission and subsequent mailing of the proxy statement to shareholders.
>
> "The sale of PPD to The Carlyle Group and Hellman & Friedman provides an attractive return for our shareholders, while also ensuring a secure foundation and commitment to investment, innovation and excellence for PPD clients and employees as the company builds on its 25-year history of success."

34.     The Proposed Transaction is unfair and undervalued.  The $33.25 per share agreed to in the Proposed Transaction is a woefully inadequate price, and defendants' rationale for asserting that the premium supports a fair price is unsound as PPDI stock has been trading at depressed levels and the Company is at the bottom of a cycle that is expected to improve as the economy emerges from the current recession.  Indeed, the "premium" touted by defendants is based on the price of PPDI common stock on September 30, 2011, that represented a relative low for the shares at $25.66 per share, versus a 52-week high of $33.07 per share.  A fair price cannot

be based on a purported "premium" over a depressed market price and thus, the $33.25 price is unfair to shareholders.

35. Furthermore, The Proposed Transaction is unfair and undervalued, since according to Thomson/First Call, at least one financial analyst values PPDI common stock at $38.00 per share. In fact, PPDI was trading at $32.28 as recently as August 16, 2011, and was poised to continue its recent growth. However, the Individual Defendants agreed to sell the Company at a materially inferior price, to the detriment of the Plaintiff and the Class.

**The Proposed Transaction Resulted From Crippling Conflicts of Interest**

36. In addition, certain of the Individual Defendants will receive lavish compensation, benefits or change of control and severance benefits. First, while no formal agreements have been negotiated or executed, it is expected certain of the Individual Defendants will potentially receive windfall change-of-control payments, materially conflicting their ability to effectively protect the interests of PPDI shareholders.

37. Defendant Hill, who was recently selected as the new chief executive officer ("CEO") and elected to the Board on September 16, 2011, is in position to potentially reap an $8 million payment upon the consummation of the Proposed Transaction. Specifically, it appears as though Hill's two-and-a-half weeks of employment could prove extremely (and suspiciously) lucrative. As spelled out in the 8-K filed with the Securities and Exchange Commission ("SEC") on September 22, 2011 after Hill was appointed CEO, Hill's salary was set at $575,000. In addition, he received 30,000 restricted stock units ("RSUs") and 150,000 options. While an additional Form-4 filed with the SEC notes that the 150,000 options vest in three equal increments starting next year (2012), the September 22, 2011 filing seems to indicate that the

options vest immediately upon a change in control.  Thus, Hill roughly stands to make over $5 million just on the stock and options.  In little over two-and-a-half weeks of employment.

38.     Additionally, according to the 8-K, Hill is set to receive 2.99 times his salary, or $1.7 million, and two years of benefits, if his employment is terminated after the consummation of the Proposed Transaction.  Thus, it appears that Hill's two-and-a-half week stint as CEO could be worth close to $8 million.  With such a lucrative payout awaiting Hill upon a change of control, he was materially conflicted as a member of the Board and unable to adequately protect the interests of the shareholders in negotiating the best possible deal in the Proposed Transaction.

39.     Contributing to the crippling conflicts of interest, in the Proposed Transaction, PPDI was represented by investment advisors Morgan Stanley & Co. LLC ("Morgan Stanley") and Lazard Freres & Co., LLC ("Lazard").  However, there is an inherent conflict in that Morgan Stanley frequently partners with the Buyout Group on lucrative deals, including, for example, the acquisition of Manor Care, Inc. by The Carlyle Group in 2007 where Morgan Stanley acted as a financial advisor for The Carlyle Group.

***Preclusive Deal Protection Devices***

40.     Despite an opportunity for a robust process to engage multiple bidders in a sale of the Company, the Individual Defendants favored the Buyout Group and did not conduct an auction or reliable market check to solicit other likely potential bidders.

41.     Rather, the Individual Defendants agreed to an inadequate 30-day "go-shop" period whereby, having already committed to the Proposed Transaction at $33.25 per share and a potential termination fee in excess of $58 million to the Buyout Group (representing 1.6% of the equity value of the Proposed Transaction), the Individual Defendants would proceed during the next 30 days to solicit other interest in the Company.  However, any other interested parties

would effectively have to pay the termination fee to the Buyout Group and be faced with the Buyout Group's matching rights for any competing bid, all of which is designed to repel any real competition to the Proposed Transaction.

42. Specifically, according to the terms of the Merger Agreement, during the period from October 3, 2011 and continuing until 11:59 p.m. on November 3, 2011 (the "Go-Shop Period") the Company may solicit alternative acquisition proposals. During that time period, the Company may terminate the Merger Agreement if the Company receives a takeover proposal that the Board determines in good faith constitutes a "Superior Proposal." Under these circumstances, a termination fee of $58 million would be payable to the Buyout Group.

43. Moreover, even if PPDI receives a "Superior Proposal" from a third party, the Company is obligated under Section 6.2 of the Merger Agreement, within 24 hours thereafter, to make available to the Buyout Group any material non-public information concerning the Company or its Subsidiaries that the Company provides to any person given such access that was not previously made available to the Buyout Group to avoid having the Company accept the "Superior Proposal."

44. Further ensuring that the transaction is locked up in favor of the Buyout Group is the fact, that the Buyout Group now has unfettered access to all of PPDI's books and records pursuant to Section 6.6 of the Merger Agreement with only limited exclusions, a right not shared by other potentially-interested parties.

45. By agreeing to the Proposed Transaction, the Individual Defendants have initiated a process to sell the Company, which imposes heightened fiduciary responsibilities on them and requires enhanced scrutiny by the Court. The Individual Defendants owe fundamental fiduciary obligations to the Company's shareholders to take all necessary and appropriate steps to

maximize the value of their shares in implementing such a transaction. In addition, the Individual Defendants have the responsibility to act independently so that the interests of PPDI's shareholders will be protected, and to conduct fair and active bidding procedures or other mechanisms for checking the market to assure that the highest possible price is achieved.

46. PPDI represents a highly attractive acquisition candidate in light of its prospects for future growth in the CRO sector and earnings potential, however the Proposed Transaction caps the PPDI shareholders' growth potential at an unfair and undervalued amount to the detriment of the Class. The preferential treatment accorded to the Buyout Group also deprived and will continue to deprive PPDI's shareholders of any substantial premium which only unfettered and even-handed exposure of the Company to the market could produce.

## COUNT I

### Claim for Breach of Fiduciary Duties
### Against the Individual Defendants

47. Plaintiff repeats and realleges each and every allegation set forth herein.

48. The Individual Defendants have violated their fiduciary duties owed to the public shareholders of PPDI and have acted to put their personal interests ahead of the interests of PPDI shareholders or acquiesced in those actions by fellow defendants. These Individual Defendants have failed to take adequate measures to ensure that the interests of PPDI's shareholders are properly protected and have embarked on a process that avoids competitive bidding and provides the Buyout Group with an unfair advantage by effectively excluding other alternative proposals.

49. By the acts, transactions, and courses of conduct alleged herein, the Individual Defendants, individually and acting as a part of a common plan, will unfairly deprive Plaintiff and other members of the Class of the true value of their PPDI investment. Plaintiff and other

members of the Class will suffer irreparable harm unless the actions of the Individual Defendants are enjoined and a fair process is substituted.

50.     The Individual Defendants have breached their duties of loyalty, entire fairness, good faith, and care by not taking adequate measures to ensure that the interests of PPDI's public shareholders are properly protected from over-reaching by the Buyout Group.

51.     By reason of the foregoing acts, practices, and courses of conduct, the Individual Defendants have failed to exercise due care and diligence in the exercise of their fiduciary obligations toward Plaintiff and the other members of the Class.

52.     As a result of the actions of Defendants, Plaintiff and the Class have been, and will be, irreparably harmed in that they have not, and will not, receive their fair portion of the value of PPDI's stock and businesses, and will be prevented from obtaining a fair price for their common stock.

53.     Unless enjoined by this Court, the Individual Defendants will continue to breach the fiduciary duties owed to Plaintiff and the Class and may consummate the Proposed Transaction to the disadvantage of the public shareholders.

54.     The Individual Defendants have engaged in self-dealing, have not acted in good faith, and have breached, and are breaching, fiduciary duties owed to Plaintiff and the other members of the Class.

55.     Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury which these actions threaten to inflict.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor and in favor of the Class, and against the defendants as follows:

A.     Certifying this case as a class action, certifying Plaintiff as class representative and his counsel as class counsel;

B.     Declaring that the conduct of the Individual Defendants in approving the Proposed Transaction and failing to negotiate in good faith with the Buyout Group and other acts and omissions set forth herein are breaches of the Individual Defendants' fiduciary duties;

C.     Preliminarily and permanently enjoining the Individual Defendants and all persons acting in concert with them from taking any steps to consummate the Proposed Transaction on the terms presently proposed;

D.     Preliminarily and permanently enjoining the Individual Defendants from initiating any defensive measures that would inhibit the Individual Defendants' ability to maximize value for  PPDI shareholders;

E.     To the extent the Proposed Transaction is consummated prior to this Court's entry of a final judgment, rescinding it and setting it aside or awarding rescissory damages;

F.     Directing the Individual Defendants to account to Plaintiff and the Class for all damages suffered by them as a result of defendants' wrongful conduct alleged herein;

G.     Awarding Plaintiff the costs, expenses, and disbursements of this action, including attorneys' and experts' fees and, if applicable, pre-judgment and post-judgment interest; and

H.     Awarding Plaintiff and the Class such other relief as this Court deems just, equitable, and proper.


Dated: October 11, 2011                    /s/ Shane T. Rowley
                                            Shane T. Rowley
                                           **Attorney for Plaintiff**
                                           **FARUQI & FARUQI, LLP**
                                           369 Lexington Ave., 10th Floor
                                           New York, NY 10017
                                           srowley@faruqilaw.com
                                           Tel: 212-983-9330
                                           Fax: 212-983-9331
                                           New York State Bar No.: SR0740
                                           **OF COUNSEL**


                                           /s/ William E. Moore Jr.
                                           William E. Moore, Jr.
                                           **Attorney for Plaintiff**
                                           **Gray, Layton, Kersh, Solomon,**
                                           **Furr & Smith, P.A.**
                                           516 South New Hope Road
                                           P.O. Box 2636
                                           Gastonia, North Carolina 28053-2636
                                           bmoore@gastonlegal.com
                                           Tel:  704-865-4400
                                           North Carolina Bar No. 9962
                                           **Local Civil Rule 83.1 Counsel**